UNITED STATES DISTRICT COURT
NORTHERN DISTRI0CT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ANNIE LAURA THOMPSON, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-04-CO-03056-J |
| TOWN OF DOUBLE SPRINGS, et al. | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

This Court once again has before it motions by Defendants seeking substantive consideration of the *pro se* plaintiff's claims of copyright violations pursuant to Title 17 of the United States Code, trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and violations of various state laws.[1] Presently pending are motions for summary judgment filed by: (1) Chester McKinney (Doc. 54); (2) Dwain Moody (Doc. 58); (3) Town of Double Springs (Doc. 62); (4) Looney's Tavern Parkway Plaza, Inc. (Doc. 64); (5) Gregory Farris, Glennis Posey, Edward O'Neal

---

[1] As discussed herein, the Court previously granted, in part, motions to dismiss filed by these defendants. (Docs. 44 & 52.)

Shipman, Ben Schillaci, J. D. Snoddy, and Donald Dodd (Docs. 69 & 77); (6) Lanny McAllister (Doc. 72); and (7) Larry McCoy (Doc. 74). Defendants Farris, Posey, Shipman, Schillaci, Snoddy, and Dodd also filed a motion to strike Annie Laura Thompson's Affidavit (Doc. 94), and Plaintiff filed motions to supplement her submission (Docs. 97, 105 & 106). The motions have been briefed and are ready for submission.

I.   Procedural History.

This action was commenced on October 21, 2004, after Plaintiff's fourth and fifth requests to amend her complaint in CV-01-HS-1223-J were denied. The claims included in this action are substantially similar to the claims in CV-01-HS-1223-J, and arise out of the same set of operative facts.[2] In both cases, Plaintiff complains that Defendants were responsible, in various capacities, for plays and movie scripts about historical events in

---

[2]See CV-01-HS-1223-J, August 25, 2005, Memorandum of Opinion (Doc. 666, pp. 4-5) (listing claims in Third Amended Complaint). Plaintiff added new defendants in the present action whose connection to the events at issue are primarily derivative of the primary defendants named in the earlier litigation.

Winston County during the Civil War which infringed her father's copyrighted works.³

On July 26, 2005, this Court entered an opinion and order dismissing all claims against parties Margie Benson and Keith Hager. (Doc. 44.) Therefore, the remaining defendants are: (1) Town of Double Springs; (2) Looney's Tavern Parkway Plaza, Inc.; (3) Larry McCoy; (4) Dwaine Moody; (5) Gregory Farris; (6) Glennis Posey; (7) Edward O'Neal Shipman; (8) Ben Schillaci; (9) Chester McKinney; (10) Donald Dodd; (11) Lanny McAlister; (12) JennyMac Productions; and (13) J. D. Snoddy.

The following claims were dismissed in the July 26, 2005, Opinion and Order: (1) all copyright claims based on the screenplay and movie plans; and (2) all copyright claims based on plays performed prior to October 21, 2001. The following claims were dismissed in an August 29, 2005, Opinion and Order: (1) the Lanham Act claims against defendants Farris, Shipman, Posey,

---

³Plaintiff claims the copyrighted works, <u>Tories of the Hills</u>, <u>Free State of Winston-A History of Winston County, Alabama</u>, and <u>So Turns the Tide</u> were infringed by productions, in the Looney Tavern outdoor amphitheater in Double Springs, Alabama, of the plays <u>Incident at Looney's Tavern</u>, from 1989-1995; <u>Looney's Tavern: The Aftermath and the Legacy</u>, from 1996-1999; and <u>Incident at Looney's Tavern</u>, in 2000 through 2003 (a revision of earlier scripts).

Snoddy, Schillaci, Moody, McAlister, and JennyMac based on plays performed prior to October 2003; (2) all Lanham act claims against defendant Dodd; (3) Counts Six and Seven, the fraud claims.  Accordingly, the following claims remain in dispute: (1) (Count One) copyright claims based on plays performed after October 1, 2001;[4] (2) (Count Two) breach of contract; (3) (Count Three) unfair trade practices and misappropriation (Lanham Act claims); (4) (Count Four) unfair trade practices and unfair competition; (5) (Count Eight) failure to account.[5]

II.    Discussion.

    A.    The Motions to Supplement and the Motion to Strike.

Subsequent to making her December 1, 2005, submission in response to Defendants' motions for summary judgment, Plaintiff filed motions to

---

[4] In the July 26, 2005, Opinion and Order, this Court stated that Dodd's Motion to Dismiss copyright claims based on his book, The Free State of Winston, would be denied. In the present submissions, Dodd pointed out that the Court erred in concluding that Thompson asserted any copyright claims against Dodd. Count One of the Complaint does not make any mention of claims based on Dodd's book, and he is specifically excluded from the claims based on the plays. See Complaint, pp. 12-28. Upon review, the Court agrees there are no pending copyright claims against Dodd.

[5] The plaintiff included a request for declaratory judgment in Count Five and requests for damages and equitable relief in Count Nine, but included no new substantive causes of action in those counts.

supplement on December 15, 2005, (Doc. 97), and on January 6, 2006, (Doc. 106). This Court initially gave Plaintiff one month, from September 30, 2005, to October 31, 2005, to respond to Defendants' motions for summary judgment. (Doc. 71.) On Plaintiff's request, the Court allowed her an additional month, until December 1, 2005, to make a response (Doc. 84) (stamped ruling). Plaintiff did not offer any new reason for her failure to make a complete submission on December 1, two months after the motions for summary judgment had been filed. On review of the additional evidence Plaintiff submitted, the Court finds nothing new and pertinent to the issues raised in these summary judgment proceedings. Rather, the plaintiff has included evidence that was already before the Court, and evidence that is intended to attack Judge Hopkins' summary judgment opinion rather than address the collateral estoppel questions at issue here. Furthermore, she has not provided any good cause for her failure to include all her arguments in her December 1 submission. Accordingly, the plaintiff's motions to supplement are due to be DENIED. (Doc. 97, 105 & 106.)

Defendants Farris, Posey, Shipman, Schillaci, and Snoddy filed a motion to strike paragraphs 18, 28, 33 and 40 of Plaintiff's December 2,

2005, affidavit, alleging those portions of the affidavit were not based on personal knowledge and constitute impermissible hearsay. Plaintiff submitted a response to the motion on January 10, 2006. (Doc. 107).[6]

In Paragraph 18 of her affidavit, Plaintiff states that her father told her that Donald Dodd took parts of Tories of the Hills for a book. In Paragraph 28 of her affidavit, Plaintiff states that she has been told by "those in a position to know" that there is political interest in her lawsuit. In Paragraph 40 of her affidavit, Plaintiff states that Goch told her some Defendants were involved with the Freedom Run screenplay. Paragraphs 18, 28, and 40 are hearsay and are due to be STRICKEN. In Paragraph 33 of her affidavit, Plaintiff states that it is her "observation that Donald Dodd is not famous except for flight magazines." Paragraph 33 is not based on personal knowledge and is irrelevant. Accordingly, Paragraph 33 is due to be STRICKEN.

---

[6] To the extent Document 107 purports to be a "Response to Defendants' Reply," such submissions are not normally accepted by the Court, and the Court did not, and was not asked to, make an exception to its normal procedure in this case. See Order of September 30, 2005, establishing summary judgment submission requirements. (Doc. 71.) Accordingly, only those portions of Document 107 which are responsive to the defendants' motion to strike were considered.

B.     Effect of Judge Hopkins' Opinion.

As observed above, this action arose when Plaintiff's fourth and fifth motions to amend her complaint in CV-01-HS-1223-J were denied, and Plaintiff initiated this new action, adding parties she attempted to include in CV-01-HS-1223-J. Consequently, the claims in CV-01-HS-1223-J and in this case arise out of the same set of operative facts and overlap to a significant degree.  Because of the similarities in the cases, upon conclusion of the 12(b)(6) proceedings, this Court stayed discovery and further motion practice in this case while Judge Hopkins completed summary judgment proceedings in CV-01-HS-1223-J.  On August 25, 2005, Judge Hopkins entered an extensive Memorandum of Opinion and Order granting all pending motions for summary judgment in CV-01-HS-1223-J. On this Court's suggestion, the defendants in this action have filed motions for summary judgment intended to explore the collateral estoppel effect of Judge Hopkins' decision and to consider any other claims which are appropriate for summary adjudication.

"Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX*

*Transportation, Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003).  Collateral estoppel applies if: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.  *Id.*, (citation omitted).

      Plaintiff asserts that none of the prerequisite elements for collateral estoppel have been established. She contends she did not have a full and fair opportunity to litigate in Judge Hopkins' court because Judge Hopkins did not hold an evidentiary hearing, permit her to file discovery materials, or make an argument or rebuttal.  On the contrary, the record in CV-01-HS-1223-J shows that Judge Hopkins gave individual and substantive consideration to Plaintiff's numerous motions, briefs, arguments and evidentiary submissions prior to entry of summary judgment.  That Judge Hopkins denied some of Plaintiff's requests is not evidence that Plaintiff did not have a full and fair opportunity to litigate.  The record shows that

Plaintiff conducted extensive discovery in CV-01-HS-1223-J prior to summary judgment, and was afforded an opportunity to respond to Defendants' submissions with a written argument and evidentiary submission.

Plaintiff also claims collateral estoppel does not apply because Judge Hopkins cannot resolve issues related to defendants and scripts which were excluded from her case and included in this case.  As discussed below, certain issues were raised, litigated, and necessarily resolved in Judge Hopkins' summary judgment proceedings which are identical to crucial issues in this action.  Since Plaintiff had an opportunity to fully and fairly litigate those issues in Judge Hopkins' court, the defendants in this action are entitled to rely on Judge Hopkins' resolution without re-litigation.

Plaintiff also contends Judge Hopkins improperly resolved disputed issues of fact and made other errors of fact and law in the memorandum of opinion.  While this Court disagrees with Plaintiff's assessment of Judge Hopkins' well-reasoned and thoughtful opinion, it is more pertinent to observe that the application of collateral estoppel does not turn on the correctness or incorrectness of Judge Hopkins' decision.  *See Blumcraft of*

*Pittsburgh v. Kawneer Co., Inc.*, 482 F.2d 542 (5th Cir. 1973).[7] If Plaintiff convinces the Eleventh Circuit that Judge Hopkins erred, and if a timely request is made, this Court's entry of summary judgment based on collateral estoppel can be reconsidered. *See Alexander v. AOL Time-Warner Inc.*, 132 Fed. Appx. 267, 2005 U.S. App. LEXIS 9321 (11th Cir. 2005)(unpublished).

Until recently, Plaintiff's contention that Judge Hopkins' summary disposition was not final had some basis, since the consideration of Plaintiff's appeal was suspended until it could be determined if there had been a final resolution of all parties and claims sufficient to confer appellate jurisdiction. However, Plaintiff subsequently received notification that preliminary review in the court of appeals indicated there was jurisdiction for the appeal, although the panel will make the ultimate decision. (Doc. 102.) Even if the Eleventh Circuit determines that a stray party or claim from CV-01-HS-1223-J is unresolved, this Court has concluded that consideration of the present motions for summary judgment should

---

[7]In *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

proceed. The benefit to the defendants is obvious, because issues resolved in Judge Hopkins' case will also be laid to rest in this action without further expense. The judicial system will benefit from consistency in the litigation of both actions.

>   C.   Count One, The Copyright Claims ( Defendants McKinney, Moody, Town of Double Springs, Looney's Tavern Parkway Plaza, Inc., Farris, Posey, Shipman, Schillaci, Snoddy, McAllister, McCoy).

As discussed above, this Court previously dismissed all copyright claims based on plays performed before October 21, 2001, and the screenplay and movie plans. The only remaining copyright claims in this action are those based on plays performed after October 1, 2001.

Judge Hopkins concluded the plays presented at Looney's Tavern Outdoor Amphitheater were not infringing of Plaintiff's copyrights, and particularly, that the play "Incident at Looney's Tavern" which was produced and performed at the Looney Tavern outdoor amphitheater in 2001 and 2002 was non-infringing because it was, in all material respects, the same as the 1993 script, and was, therefore, licensed by the 1995 Settlement and Release Agreement. This issue was fully, fairly and actually litigated before Judge Hopkins and her determination of the issue was a

critical and necessary part of her judgment.  Therefore, unless and until Plaintiff convinces Judge Hopkins or the Eleventh Circuit to change this conclusion, she is bound to abide by it.  Accordingly, the defendants are entitled to summary judgment as to the copyright claims based on the 2002 plays.

Furthermore, the defendants here presented evidence that the plays performed in 2003 were identical in all material respects to the plays performed in 2001 and 2002, and that 2003 was the last year any plays were presented at the Looney's Tavern outdoor amphitheater.  *See Affidavit of Dwain Moody*, Doc. 61, Ex. E.  Plaintiff has not presented any competent evidence to the contrary.  Because the 2003 plays were identical to the 2001 and 2002 plays which Judge Hopkins found were not infringing, the 2003 plays are also non-infringing.

Accordingly, all defendants will be granted summary judgment on the remaining copyright claims in this action.[8]

---

[8]The Court recognizes that some defendants have offered additional, legitimate, reasons for granting summary judgment in their favor.  See, e.g. Submission of Looney's Tavern Parkway Plaza, Doc. 64-66; McKinney Submission, Doc. 54.

>   D.   Count Two, The Breach of Contract Claim (Defendants McAlister and "Looney's Board Members" Moody, Farris, Shipman),

Plaintiff claims the defendants breached the 1995 Settlement Agreement by writing and producing new "derivative" plays, particularly "Looney's Tavern: Aftermath & Legacy" without her permission. The 1995 Settlement Agreement was between Looney's Tavern, Lanny McAlister, Plaintiff and her sister, Mary Alice Yarborough. (CV-01-HS-1223-J, Doc. 666, p. 21.) Therefore, Moody, Farris, and Shipman were not parties to the contract and are not liable for any breach.

Defendant McAlister points out that he and defendant JennyMac Productions, Inc., were named defendants in CV-01-HS-1223-J, and that Judge Hopkins found they had no connection with Looney's Tavern or the plays after 1998. (CV-01-HS-1223-J, Doc. 666, p. 65.) Further, Judge Hopkins dismissed all claims against McAlister and JennyMac. Because the claims in this action arise out of the same set of operative facts, and are identical to the claims in CV-01-HS-1223-J, McAlister and JennyMac are entitled to summary judgment in this action based on Judge Hopkins' opinion.

    E.    Count Three, The Lanham Act Claim (Defendants Moody, and Free State Board Members Farris, Shipman, Posey, Snoddy, Schillaci).[9]

Plaintiff alleges the defendants violated the Lanham Act by passing off McAlister as the author of the plays, rather than giving credit to her father. Applying Judge Bowdre's reasoning as to the appropriate statute of limitations for Lanham Act claims, this Court dismissed all Lanham Act claims based on plays performed prior to October 21, 2003, one year prior to the initiation of this action. Dwain Moody, president of Looney's Tavern Productions, Inc., submitted an affidavit in which he stated that the play "Incident at Looney's Tavern" was last performed on August 30, 2003, and has not been advertised or promoted since August 30, 2003. (Doc. 61, Ex. E.) Plaintiff has not presented any competent evidence contradicting Moody's statement. There being no dispute of material fact, summary judgment is due to be granted as to Count Three for all defendants.

---

[9]The Lanham Act claims against Dodd, based on his book, "The Free State of Winston," have been dismissed. As discussed above, McAlister and JennyMac are entitled to summary judgment in this action because they were named defendants in Judge Hopkins' case and obtained summary judgment there on identical claims.

    F.    Count Four, Unfair Trade Practices and Unfair Competition (Defendant McAlister).

As discussed above, Plaintiff's claims against defendant McAlister, including the claim for unfair trade practices and unfair competition, were dismissed by Judge Hopkins in CV-01-HS-1223-J. (Doc. 666, pp. 2, 39 - 43.) Accordingly, this identical claim is due to be dismissed.

    G.    Count Eight, Failure to Account (Defendants McAlister, and Looney's board members Moody, Farris, Snoddy, Schillaci, Posey, and Shipman.

Plaintiff claims these defendants failed to account for license fees due to her. Judge Hopkins observed that Section 1(d) of the 1995 Settlement and Release Agreement requires Looney's Tavern to allow Plaintiff's designated attorney or CPA to audit its books upon 30 days notice. (CV-01-HS-1223-J, Doc. 666, p. 30.) However, Judge Hopkins found that Looney's Tavern had repeatedly informed Plaintiff she was entitled to have her designated attorney or CPA inspect their books, but there was no evidence that she had done so. *Id.* at p. 72. Further, Judge Hopkins found that Free State had permitted Plaintiff to review its records for the year 2000,

although it did not appear to have a duty to do so.  Accordingly, Judge Hopkins dismissed the claims for failure to account.  *Id.*

Defendants Moody, Farris, Snoddy, Schillaci, Posey, and Shipman are sued here in their capacities as either Looney's Tavern or Free State board members. Because Judge Hopkins found that Free State had no duty to account, and Looney's Tavern discharged its duty to account, the board members are entitled to summary judgment as to these derivative claims for an accounting.

Defendant McAlister is due to be granted summary judgment based on Judge Hopkins' opinion.

III.    Conclusion.

For the reasons set forth herein, the Motion to Strike (Doc. 94) is due to be GRANTED.  The Motions to Supplement (Doc. 97 and 105) are due to be DENIED.  Document 107, to the extent it is a motion, is due to be DENIED.  The defendants' motions for summary judgment are due to be GRANTED.  This action is due to be DISMISSED in its entirety.  A separate order will be entered.

Done this 30th day of January 2006.

             _____
                      L. SCOTT COOGLER
             UNITED STATES DISTRICT JUDGE
                              124153